UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

|  |  |
|---|---|
| GRACE E. RIDLEY, | Chapter 13 |
|  | Case No. 09-50736 |
| Debtor. | |

---------------------------------------------------------------x
GRACE E. RIDLEY,                                                    Adv. Pro. No. 10-01077

                              Plaintiff,

        -against-


DEUTSCHE BANK NATIONAL TRUST
COMPANY as Trustee for GSSAA HOME
EQUITY TRUST 2006-17, ASSET-BACKED
CERTIFICATES, SERIES 2006-17 and
ALLSTATE HOME LOANS, INC.,

                              Defendants.

---------------------------------------------------------------x

### MEMORANDUM DECISION ON MOTION TO DISMISS
### THE SECOND AMENDED COMPLAINT


Appearances:

| | |
|---|---|
| Hersh Jakubowitz, Esq. | Constantine D. Pourakis, Esq. |
| THE LAW OFFICES OF | Bradley L. Mitchell, Esq. |
| HERSH JAKUBOWITZ, PLLC | STEVENS & LEE, P.C. |
| 42-34 162nd Street | 485 Madison Avenue, 20th Floor |
| Flushing, NY 11358 | New York, NY 10022 |
| *Attorneys for Grace E. Ridley* | *Attorneys for Deutsche Bank National Trust* |
| | *Company as Trustee for GSSAA Home* |
| | *Equity Trust 2006-17, Asset-Backed* |
| | *Certificates, Series 2006-17* |

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced by Grace E. Ridley, the debtor in this

Chapter 13 case, against defendants Deutsche Bank National Trust Company as Trustee for

GSSAA Home Equity Trust 2006-17, Asset-Backed Certificates, Series 2006-17 ("Deutsche

Bank") and Allstate Home Loans, Inc. ("Allstate").  Ridley seeks to allege violations of

Nevada's Unfair Lending Practices Act and common law claims of fraudulent concealment and

fraudulent inducement in connection with her purchase of a home in Las Vegas, Nevada.

Deutsche Bank seeks the dismissal of this action pursuant to Federal Rules of Civil

Procedure 12(b)(6), 8(a), and 9(b), made applicable here by Federal Rules of Bankruptcy

Procedure 7012(b), 7008, and 7009(b).  For the reasons set forth below, Deutsche Bank's motion

is granted in part and denied in part.

The question posed by this motion is just how far a mortgage lender can go in making

statements and promises to a prospective borrower before it crosses the line that divides

permissible business practices from prohibited ones.  Here, after three attempts, Ridley does not

state a claim under the Nevada statute governing home lending that was in effect at the time of

the transaction, and she cannot benefit from a statute that was passed after the loan was made.

But she alleges enough to show that, if proved, the lender may be liable for fraudulent

inducement to enter into the loan.

### Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## Background

This case arises out of Ridley's purchase of a home in Las Vegas in May 2006.  The loan was made by Allstate, which employed Mortgage Services Group ("MSG") to initiate and complete the mortgage application.  The note and deed of trust were then assigned to Deutsche Bank, which does not dispute that it steps into the shoes of Allstate as Allstate's assignee and is subject to the claims and defenses that Ridley can raise against Allstate.

Ridley claims that she purchased a home that she could not afford in reliance on false representations by Allstate and MSG, and that Allstate breached its obligation under Section 598D.100 of the Unfair Lending Practices Act to determine whether she could afford to make the necessary payments.  She also alleges that Allstate committed common law fraudulent concealment and fraudulent inducement.  Ridley seeks to have the mortgage, loan, and deed of trust declared void, and also seeks compensatory and punitive damages and attorneys' fees, among other relief.

Ridley initially sought relief against Deutsche Bank and Allstate in a complaint filed on March 26, 2010.  She attempted to assert two claims under the Unfair Lending Practices Act and two claims under the federal Truth in Lending Act.  She restated these claims in an Amended Complaint filed on May 11, 2010.

Deutsche Bank moved to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted and on October 18, 2010, the Court entered an Order on consent dismissing the Amended Complaint with leave to replead.

The Allegations of the Second Amended Complaint

On November 15, 2010, Ridley filed a Second Amended Complaint against Deutsche

Bank and Allstate, asserting claims for violations of Section 598D.100 of the Nevada Unfair Lending Practices Act and common law claims for fraud in the inducement and fraudulent concealment.[1]  She alleges that on May 5, 2006, she entered into a $360,000 loan with Allstate, which was secured by a deed of trust on the Las Vegas property.  She further alleges that Allstate then assigned the loan to Deutsche Bank, which currently holds the first lien on the property.[2]

As noted above, Ridley alleges that Allstate hired MSG to initiate and complete her mortgage application, and that she provided MSG with certain financial information by telephone in connection with that application.  Ridley also states that she gave MSG her correct financial information, but MSG intentionally prepared the application with false information.  And Ridley alleges that MSG misrepresented her monthly mortgage expenses, overstated her income, exaggerated her retirement account balance, and understated or omitted certain of her housing and other expenses.

In particular, Ridley states that on her mortgage application, MSG misrepresented that her monthly mortgage payments for her Hempstead, New York residence were $3,088, when in fact her monthly mortgage payments on a first and second mortgage totaled $3,905.  She alleges that MSG misrepresented that her monthly income was $9,950, when in fact it was only $5,875.  She notes that her 2005 tax return shows a total income of $70,658, corresponding to monthly income of $5,888.  And Ridley states that her retirement account balance was greatly exaggerated, as there was only $180,000 in that account at the time of the processing of the loan

---

[1]  Allstate was not served with the Second Amended Complaint and has not appeared in this action.

[2]  The Second Amended Complaint also states that Allstate holds a subordinate lien on the property.

and mortgage applications, and she notes that this balance has been exhausted in her efforts to make her mortgage payments to Deutsche Bank.

In addition, Ridley alleges that Allstate promised her that if she maintained a good payment record for six months, it would refinance the loan at a lower interest rate and on better terms that would reduce her monthly payments by at least $1,500.  And she alleges that Allstate told her not to consult an attorney because its "representatives were looking out for [her] best interests."  Sec. Am. Compl. ¶ 17.  Ridley asserts that based on these statements, she did not retain counsel and "believed that the real estate broker, Allstate and [she] were all bonded together."  *Id*.

Ridley states that she reasonably relied on these representations and on or about May 5, 2006, executed a deed of trust to secure a $360,000 loan from Allstate to purchase the Las Vegas property.  She alleges:

> [T]he signing was performed via facsimile, the pages were provided piecemeal, and the execution was done without review of the documents based upon the representations of Allstate, or Allstate's representative(s), that the contents of the documents were legitimate, correct and necessary to effectuate the loan.

Sec. Am. Compl. ¶ 18.

Ridley alleges that prior to issuing the loan, "Allstate never attempted to verify [that she could repay] the loan" and did not, for example, "review tax returns[,] payroll and other basic documents [that] lenders would rely upon in determining a borrower's ability to repay."  Sec. Am. Compl. ¶ 21.  And she states that "a reasonable and/or prudent lender would not have issued the mortgage on the premises" to her, because she "did not have the financial capability of paying the monthly mortgage of $3,905.00."  Sec. Am. Compl. ¶ 22.

On December 15, 2010, Deutsche Bank filed a motion to dismiss the Second Amended

4

Complaint and a memorandum of law in support of its motion ("Def's Mem.").  On December 29, 2010, Ridley filed opposition to the motion ("Pl's Opp. Mem.").  And on January 5, 2011, Deutsche Bank filed a reply memorandum of law ("Def's Reply Mem.").  On February 4, 2011, the Court held a hearing on Deutsche Bank's motion to dismiss the Second Amended Complaint at which Ridley and Deutsche Bank appeared by counsel and were heard, and the Court reserved decision.

## Discussion

Ridley's claims must be measured within the framework of Federal Rules of Civil Procedure 8(a) and 12(b)(6), made applicable here by Bankruptcy Rules 7008 and 7012.  These rules set forth the standards applicable to stating a claim for relief.  To the extent that Ridley's claims sound in fraud, they must also satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), made applicable here by Bankruptcy Rule 7009.

Pleading Requirements Under Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that under this rule, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

And in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court set forth a two-step approach for courts to follow when deciding a motion to dismiss.  First, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

<u>Pleading Requirements Under Federal Rule of Civil Procedure 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In *Twombly*, the Supreme Court held that for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010); *Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A court is not required to accept as true those allegations that amount to no more than legal conclusions. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to not only the facts alleged in the complaint, but also those "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference into the complaint). Other documents may be considered if they are documents "upon which [the complaint] solely relies and . . . [are] integral to the complaint." *Roth*, 489 F.3d at 509 (internal quotation marks omitted). But "even if the document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

<u>Pleading Requirements Under Federal Rule of Civil Procedure 9(b)</u>

Federal Rule of Civil Procedure 9(b) raises the bar for pleading a claim that sounds in fraud. This rule requires a party alleging fraud to "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement is designed to give a defendant notice of a claim and to safeguard a defendant's reputation from "improvident" allegations of fraud. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this pleading threshold, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

7

statements were made, and (4) explain why the statements were fraudulent." *Mills*, 12 F.3d at 1175.

But Rule 9(b) does not require absolute precision, and a pleading sounding in fraud will be sufficient if it provides the defendant with fair and reasonable notice of the claim and the grounds upon which it is based. *See Shema Kolainu-Hear Our Voices v. Providersoft, LLC*, 2010 WL 2075921, at *13 (E.D.N.Y. May 21, 2010) (finding complaint sufficiently particular where it explains the contents of the fraudulent statements, identifies the speaker, and explains the fraudulent intent); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 253 (S.D.N.Y. 2009) (finding allegations sufficiently particular where they identify who executed the allegedly fraudulent contract, which statements were fraudulent, and why they were fraudulent); *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 28 (Bankr. E.D.N.Y. 2006) (observing that "[t]he complaint . . . meets Rule 9(b)'s goals because the complaint gives each defendant notice of the individual allegations against them, the grounds on which they are based, and the ability to answer the complaint and prepare a defense").

Courts recognize that a plaintiff may not have access to certain kinds of information before commencing an action sounding in fraud. As a consequence, "Rule 9(b)'s requirements may be relaxed as to matters particularly within the opposing party's knowledge." *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 561 (E.D.N.Y. 2010) (internal quotation marks omitted). *See Credit & Fin. Corp. v. Warner & Swasey Co.*, 638 F.2d 563, 566-67 (2d Cir. 1981) (finding that allegations describing extensive prior dealings between the parties satisfied Rule 9(b) and entitled plaintiffs to "some modest discovery to find out whether the facts support their allegations . . . although only by a hair's breadth").

8

At a minimum, the factual allegations should either "(a) [allege] facts to show that defendants had both motive and opportunity to commit fraud, or (b) [allege] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank*, 459 F.3d 273, 290-91 (2d Cir. 2006). *See Cohen v. Koenig*, 25 F.3d 1168, 1174 (2d Cir. 1994) (finding that scienter was sufficiently pled where the complaint "spelled out circumstances from which it could easily be inferred that the [defendants] had a motive to make false representations").

<u>Whether the Second Amended Complaint States a Claim Under Nevada's Unfair Lending Practices Act</u>

Ridley's first claim is for violation of Section 598D.100(1)(b) of Nevada's Unfair Lending Practices Act.  Nevada has had a statute governing unfair lending practices in the home loan marketplace since at least 2003.  Before it was amended in October 2007, Section 598D.100 provided that it is an unfair lending practice for a lender to:

> Knowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income.

Nev. Rev. Stat. § 598D.100(1)(b) (2003) (amended 2007).

Deutsche Bank argues that Ridley does not state a claim for a violation of Section 598D.100 for several reasons.  It argues that the 2007 amendments do not apply because the loan was made when Ridley closed on the sale of the property on or about May 5, 2006, before the 2007 amendments were effective.  Deutsche Bank also contends that because Allstate fully disclosed the loan's terms and conditions, and Ridley executed all of the relevant documents, Ridley was aware of their contents and could have corrected them if necessary.  And it contends

9

that it, as Allstate's assignee, cannot be subject to an unfair lending practices claim where that claim is not adequately alleged against Allstate, the assignor.  Finally, Deutsche Bank argues that Ridley does not allege with the necessary particularity that Allstate failed to verify her ability to repay the loan.

Ridley responds that the 2007 version of Nevada's Unfair Lending Practices Act applies to her 2006 loan because the amendments simply clarified the earlier version of the statute and did not change its substantive legal meaning.  And she maintains that even if the pre-2007 version of the statute is applicable here, her claim is sufficient because Deutsche Bank did not take any affirmative steps to determine her ability to repay the loan.  Ridley also argues that she alleges with sufficient particularity that Allstate failed to take steps to verify her ability to repay the loan, and notes that Deutsche Bank does not argue that Allstate took steps to verify that she could repay the loan.

At the outset, it is plain that a complaint must be brought under the law in effect when the wrong that is complained of occurred.  *See, e.g.*, *Velasquez v. HSBC Mortg. Servs.*, 2009 WL 2338852, at *4 (D. Nev. July 24, 2009) (dismissing unfair lending claim "because the home loan relating to the Property is not subject to NRS Chapter 598D as in effect at the time of the financing").  Inasmuch as Ridley entered into the loan and mortgage in May 2006, her claims, if any, arise under Section 598D.100(1)(b) as it was in effect on that date – that is, the pre-amendment version of the Unfair Lending Practices Act.  *See Larson v. Homecoming Fin.*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) (holding that claims arising from a June 2007 loan were governed by the pre-amendment statute); *Duncan v. Countrywide Home Loans, Inc.*, 2010 WL 5463863, at *4 (D. Nev. Dec. 28, 2010) (dismissing claims brought under the 2007 statute for

10

loans obtained in 2006).[3]

Before it was amended, Section 598D.100 "[did] not require any particular verification method, but only a determination of the ability of the borrower to repay from assets other than an estimated future increase in equity." *Duncan*, 2010 WL 5463863, at *4. *See Goodwin*, 680 F. Supp. 2d at 1252-53 (dismissing complaint that did not adequately allege that the defendants extended credit based solely upon the equity in the purchased property).

And under the pre-amendment version of Section 598D.100, allegations that the lender should have known that information provided in the application was false are not sufficient to state a claim for relief. As one court observed, "'[t]he lender should have known I was lying about my income' is not a particularly convincing argument, at least not under the pre-2007 version of the statute. A lender has the right to presume the borrower is not lying on his application." *Duncan*, 2010 WL 5463863, at *4.

As a consequence, in order to state a claim under the applicable version of Section 598D.100, a plaintiff must allege that the lender knowingly or intentionally made a home loan based solely upon the borrower's equity in the home, and that the lender did so without determining that the prospective borrower could repay the loan from other assets, including the borrower's income. *Sieben v. Countrywide Home Loans, Inc.*, 2010 WL 5463932, at *4 (D. Nev. Dec. 28, 2010) (finding that a Section 598D.100(1)(b) claim requires allegations that a lender "made 'a home loan . . . based solely upon the equity of the borrower in the home property and

---

[3] At least one court has considered whether the 2007 amendments to the Unfair Lending Practices Act should be applied retroactively, and concluded that they should not be. As that court notes, "Section 598D as amended lacks any provision for its retroactive application, and civil statutes are normally presumed to operate only prospectively." *Goodwin v. Exec. Tr. Servs.*, 680 F. Supp. 2d 1244, 1252 (D. Nev. 2010) (citation omitted).

without determining that the borrower has the ability to repay the home loan from other assets'"

(quoting Nev. Rev. Stat. § 598D.100(1)(b) (2003) (amended 2007))).

Here, as described above, Ridley alleges that Allstate hired MSG to initiate the mortgage application, that MSG "telephonically contacted" her to complete the mortgage application, and that she provided MSG with "her correct financial information" including information about her income and expenses.  Sec. Am. Compl. ¶¶ 12, 13.

Ridley also alleges that the "mortgage application contains glaring omissions [and] . . . misrepresentations" as to her income and expenses, that Allstate "was fully aware" that she would not be selling her Hempstead property for at least five years, that Allstate "promised" to refinance the loan at a lower interest rate if she maintained a good payment record for six months, that Allstate "told" her not to retain an attorney because they "were looking out for her best interests," and that she signed any loan documents "via facsimile" in "piecemeal" fashion and "without review of the documents" based upon Allstate's representations that "the documents were legitimate, correct and necessary to effectuate the loan."  Sec. Am. Compl. ¶¶ 14-18.

And the Second Amended Complaint states that Allstate did not verify Ridley's ability to repay the loan and did not "review tax returns[,] payroll and other basic documents."  Sec. Am. Compl. ¶ 21.  Ridley alleges that Allstate failed to "use any means to verify [her] ability to repay the loan" and "knew or should have known that the mortgage/loan[ ] . . . [was] based upon unreliable calculations of stated income and expenses with no factual basis of her ability to repay" the loan.  Sec. Am. Compl. ¶¶ 24-25.

On a motion to dismiss, the Court must assume that Ridley's well-pleaded allegations of

fact and the reasonable inferences that they support are true.  Taken individually and as a whole, these allegations describe a situation where Ridley, as the prospective borrower, provided accurate financial information to Allstate and its agent MSG, executed loan and mortgage documents in piecemeal fashion that misstated some of this information, and relied on Allstate's and MSG's statements to the effect that if she maintained a good payment record for six months, Allstate would refinance the loan on better terms and that she did not need to consult an attorney because their representatives were looking out for her best interests.

As in effect at the time of this transaction, Section 598D.100 prohibits a specific kind of problematic conduct in the home loan market – that is, making a loan based solely upon the borrower's equity in the property.  The section does not prohibit all kinds of abuses by lenders, or all kinds of fraud.  To state a claim under Section 598D.100(1)(b), a plaintiff must allege that the lender knowingly or intentionally made a home loan based solely upon the borrower's equity, and that the lender did so without determining whether the prospective borrower could repay the loan from other assets, including from income.  Allegations that the borrower or its agents made misstatements, including intentional misstatements, in connection with inducing a prospective borrower to enter into a home loan, while possibly actionable on other grounds, are not the same as allegations that the lender made a home loan based on the borrower's equity alone.

Viewed another way, the allegations of the Second Amended Complaint aim at a different target than Section 598D.100(1)(b).  Ridley does not allege that Allstate made the loan at issue based solely upon her equity in the Las Vegas home.  Indeed, Ridley does not allege that there was equity in the property at the time that she entered into the loan and mortgage, or that

Allstate was aware of or relied upon any such equity when the transaction occurred.  As a result,

the Second Amended Complaint does not allege that Allstate "knowingly or intentionally [made]

a home loan to [her] based solely upon [her] equity . . . in the home property. . . ."  Nev. Rev.

Stat. § 598D.100(1)(b) (2003) (amended 2007).  Such allegations are necessary to her attempt to

state a claim under the Unfair Lending Practices Act, and without them, the claim cannot

proceed as a matter of law.

    For these reasons, and based on the entire record, Deutsche Bank's motion to dismiss

Ridley's claim under Nevada's Unfair Lending Practices Act is granted.

<u>Whether the Second Amended Complaint States a Fraudulent Concealment Claim</u>

    Ridley's second claim is for "fraud in the inducement/fraudulent concealment."  Under

Nevada law, the elements of a fraudulent concealment claim are:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was
> under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally
> concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the
> defendant concealed or suppressed the fact for the purposes of inducing the
> plaintiff to act differently than she would have if she had known the fact; (4) the
> plaintiff was unaware of the fact and would have acted differently if she had
> known of the concealed or suppressed fact; (5) and, as a result of the concealment
> or suppression of the fact, the plaintiff sustained damages.

*Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485, 970 P.2d 98, 110 (1998).[4]  While a

fraud claim may arise if affirmative misrepresentations are made, a fraudulent

concealment claim may arise from "negative misrepresentations, such as the failure of a

party to a transaction to fully disclose facts of a material nature" where that party has a

---

[4]  The elements of a fraudulent concealment claim are similar under New York law.
They are "(1) that the defendant failed to meet its duty to disclose [a material fact], (2) that the
defendant had an intent to defraud or scienter, (3) there was reliance on the part of the plaintiff,
and (4) damages."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993).

duty to speak.  37 Am. Jur. 2d *Fraud and Deceit* § 200 (2005).

Deutsche Bank argues that the allegations of the Second Amended Complaint, and the documents attached to and incorporated in it, establish that Allstate fully disclosed to Ridley the terms and conditions of the loan, and that she executed all of the documents necessary to enter into the loan.  It also argues that New York law does not impose a duty or special relationship between a lender and a borrower.  For these reasons, Deutsche Bank argues that Ridley does not adequately allege that Allstate concealed a material fact which it had a duty to disclose.

Deutsche Bank also argues that Ridley's fraudulent concealment claim should be dismissed because she does not allege the elements of this claim with the particularity required by Rule 9(b), as she does not allege the "who, what, when or how" with respect to Allstate's commission of the fraud.  Def's Mem. at 7.

Ridley responds that she pleads her claim for fraudulent concealment with sufficient particularity under Nevada law.  She asserts that in Nevada, "nondisclosure rises to the level of fraudulent concealment when one party has a duty to place another on equal footing, provided there is a special relationship."  Pl's Opp. Mem. at 7.  She argues that instead of ensuring that the parties were on an equal footing, MSG, as Allstate's agent, disregarded the correct financial information that Ridley provided and "intentionally prepared the application with false information."  *Id.*  Ridley further argues that Allstate "instilled a sense of trust" in her by falsely representing that they were business partners in the loan, and that she signed all of the loan documents "without a thorough review, due to Allstate's representations that the contents were legitimate,

15

correct and necessary to effectuate the loan." *Id.* And Ridley contends that a special

relationship "should certainly be possible" between her and Allstate, which would give

rise to a duty to disclose that MSG prepared her loan application with false information.

*Id.*

At least one court has construed the elements of a fraudulent concealment claim

in the context of the relationship between a lender and a borrower, and concluded that

without more, it was unlikely that the "Nevada Supreme Court would hold that a lender

. . . owe[s such] a fiduciary duty, as 'an arms-length lender-borrower relationship is not

fiduciary in nature, absent exceptional circumstances.'" *Megino v. Linear Fin.*, 2011 WL

53086, at *5 (D. Nev. Jan. 6, 2011) (quoting *Yerington Ford, Inc. v. Gen. Motors*

*Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004), *rev'd on other grounds*

*sub nom. Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007)). And

where a plaintiff did not identify "the precise circumstances" in which it received

inaccurate documents, "and how they gave rise to a reasonable belief on [its] part that

they were comprehensive," another court dismissed a fraudulent concealment claim for

failure to satisfy the particularity requirements of Rule 9(b). *Aetna Cas. and Sur. Co. v.*

*Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005).

The Supreme Court of Nevada considered the circumstances that would give rise

to a duty to disclose in *Mackintosh v. Jack Matthews & Co.*, 109 Nev. 628, 855 P.2d 549

(1993) ("*Mackintosh I*"). There, the purchasers of a home with significant latent defects

brought an action for rescission against a bank that was both the seller and lender in the

transaction. The purchasers argued that because of this dual role, the bank had a special

relationship with them which, in turn, gave rise to a duty to disclose the latent defects in the property.

The court found that factual issues precluded the entry of summary judgment for the bank, observing that "[n]ondisclosure will become the equivalent of fraudulent concealment when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him." *Mackintosh I*, 109 Nev. at 634-35, 855 P.2d at 553 (citation omitted). The court noted that this duty "may arise in any situation where one party imposes a confidence in the other because of the person's position, and the other party knows of this confidence." *Mackintosh I*, 109 Nev. at 635, 855 P.2d at 553.

The court concluded:

> [S]ummary judgment . . . would have been appropriate were it not for the additional facts that [the bank] was also financing the Mackintoshes' home as well as being the seller of it. These facts may establish a special relationship between the buyers and seller that would give rise to a duty of full disclosure . . . [s]uch facts are sufficient to preclude the granting of summary judgment in this case.

*Mackintosh I*, 109 Nev. at 629, 855 P.2d at 550.

This matter returned to the Supreme Court of Nevada four years later, following remand and a bench trial on the buyers' rescission claim. In the later decision, *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 113 Nev. 393, 935 P.2d 1154 (1997) ("*Mackintosh II*"), the court affirmed the entry of a judgment of rescission in favor of the Mackintoshes. The court stated that "the existence of the special relationship is a factual question and that while a seller/lender situation creates an inference that the relationship was created, all of the facts must be considered in order to determine if the relationship was created." *Mackintosh II*, 113 Nev. at 402, 935 P.2d at 1160.

17

The court concluded that the district court's determinations were supported by substantial evidence, noting that it was reasonable for the buyer to expect the seller "to pay greater attention to [the borrower's] interests than would an ordinary seller who was not also providing long-term financing on the property." *Mackintosh II*, 113 Nev. at 401-02, 935 P.2d at 1160. The court also noted that the borrower testified that he believed that the lender would not have made the loan if the property had been defective, and the lender "spent money to repair the property both before and after escrow closed." *Mackintosh II*, 113 Nev. at 402, 935 P.2d at 1160. This evidence demonstrated that "a reasonable lender would have known of the special confidence" the borrower had placed, and that the borrower's "failure to investigate did not outweigh [the lender's] duty to disclose." *Mackintosh II*, 113 Nev. at 399-400, 935 P.2d at 1158-59.

Here, the Second Amended Complaint states that Allstate "pretended" to act in Ridley's best interests in order to instill a sense of trust that would induce her to enter into the loan and mortgage. Sec. Am. Compl. ¶ 29. Ridley also alleges that she "reasonably had a sense of confidence in Allstate" and that "in essence and fact, Allstate was a fiduciary with a special relationship" to her. Sec. Am. Compl. ¶ 30. And she alleges that Allstate knew or reasonably should have known of that relationship.

The Second Amended Complaint also states that Allstate had a duty to deal with Ridley "in full honesty, utmost good faith and complete disclosure," but did not do so. Sec. Am. Compl. ¶ 31. Ridley alleges that Allstate "intentionally concealed the truth . . . [that it] never would refinance the existing mortgage, [regardless of her] payment record on the mortgage/loan," and "intentionally induced [her] into justifiably relying upon their misrepresentations . . . [to] induce [her] to enter into" the loan and mortgage. Sec. Am. Compl.

¶¶ 32, 34.  And Ridley alleges that if Allstate had disclosed the truth, she would never have entered into the loan and mortgage.  Ridley states that these "intentional acts and concealments" caused her to suffer damages of more than $100,000.  Sec. Am. Compl. ¶ 35

As noted above, the elements of a claim for fraudulent concealment are that the defendant concealed a material fact with the purpose to defraud the plaintiff, under circumstances where the defendant had a duty to disclose the fact, that the plaintiff would have acted differently had she been aware of the fact, and that the plaintiff sustained damages as a result of the concealment of the fact.  *Dow*, 114 Nev. at 1485, 970 P.2d at 110.

Here, a review of Ridley's allegations in the Second Amended Complaint shows that she states that Allstate "pretended" to act in her best interests and served as her fiduciary, in order to win her trust and confidence and induce her to enter into the loan and mortgage.  She points to three kinds of false statements – first, the false statement that Allstate would refinance her loan on better terms in six months; second, the false statement that Allstate would look out for her best interests; and third, the false financial information set forth in her loan and mortgage application.  And she identifies these statements, as well as Allstate's asserted fiduciary duty, as the basis for the special relationship that is the source of Allstate's duty to disclose.

Taking the well-pleaded allegations of fact and the reasonable inferences that they support as true, Ridley does not allege facts sufficient to support a plausible claim for fraudulent concealment, for at least two reasons.

First, to state this claim, Ridley must allege that Allstate concealed a material fact from her, with the purpose to defraud her.  It is not plausible to conclude that Allstate fraudulently concealed from Ridley the alleged fact that it prepared her loan and mortgage application with

false information, when Ridley also alleges that Allstate provided that application to her for signature. And Ridley asserts that Allstate fraudulently concealed the fact that it "never would refinance the existing mortgage, [regardless] as to [her] payment," and that it would look out for her best interests, but these are more in the nature of allegations that Allstate intentionally made misstatements to Ridley to induce her to enter into the loan and mortgage, not that Allstate fraudulently concealed a material fact from her. Sec. Am. Compl. ¶ 32. As a result, Ridley does not allege adequately that Allstate concealed a material fact from her, with the purpose to defraud.

And second, to state a fraudulent concealment claim, Ridley must allege that Allstate had a duty to disclose the undisclosed material facts to her. Ridley alleges that Allstate made representations to induce her to enter into the loan and mortgage, including promises to refinance the loan on better terms, and provided assurances to her, including assurances that she did not need an attorney and that Allstate was looking out for her best interests. And Ridley avers that due to Allstate's "representations and position," she reasonably placed her trust in the firm, and "in essence and fact, Allstate was a fiduciary with a special relationship" to her. Sec. Am. Compl. ¶ 30. But these representations are not on a par with the unusual circumstances that give rise to a special relationship and duty to disclose between a buyer and lender, such as the dual relationship of lender and seller that was present in *Mackintosh*. As a result, Ridley does not allege adequately that Allstate owed her a duty to disclose.

For these reasons, and based on the entire record, Deutsche Bank's motion to dismiss Ridley's claim for fraudulent concealment is granted.

<u>Whether the Second Amended Complaint States a Fraudulent Inducement Claim</u>

Ridley's second cause of action includes a claim for fraudulent inducement.  One respected treatise states that "'[f]raudulent inducement' relates to the accuracy and truthfulness of the discussions and negotiations of the parties prior to the contractual agreement."  48 Am. Jur. *Proof of Facts 3d* § 329 (1998).  The elements of a claim for fraudulent inducement under Nevada law are "that (1) defendant made a false representation; (2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance."  *Aloua v. Aurora Loan Servs.*, 2010 WL 2555648, at *2 (D. Nev. June 23, 2010).  *See Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (Nev. 1992) (stating elements of fraudulent inducement claim).[5]

Because this claim sounds in fraud, Ridley must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  *See Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 252.  But where the details of the fraud are peculiarly within the defendant's knowledge, or readily accessible to that defendant, the heightened standard of Rule 9(b) may be relaxed.  *M & T Mortg. Corp.*, 736 F. Supp. 2d at 561.

Deutsche Bank argues that Ridley bases her fraudulent inducement claim on the theory that "Allstate somehow knew [her] future plans, induced [her] to not retain an attorney, and knowingly led [her] down the path of buying the Property she could not afford," but that she does not allege with any specificity "who at Allstate knew [her] plans, when Allstate knew of

---

[5]  The elements of this claim are similar under New York law.  They are "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted).

some plan, or how a representative at Allstate knew [she] was not going to sell her house for five years." Def's Mem. at 8.  It argues that Ridley similarly alleges that it promised to refinance her mortgage if she maintained a good payment record for six months, but does not plead who made this promise, or when; and that it told her not to retain an attorney because it was looking out for her best interests, but does not plead who made these statements, or when, or how.  And Deutsche Bank notes that Ridley executed a loan application, a tax record information sheet, a truth-in-lending disclosure statement, a good faith estimate, a deed of trust, an adjustable rate note, and other documents, "on her own volition, on her own terms, and at her own convenience." Def's Reply Mem. at 6-7.

Ridley responds that she alleges each element of her fraudulent inducement claim with the particularity required by Rule 9(b) because "[t]he parties are identified, a general time frame is provided, and the underlying fraud is stated in detail."  Pl's Mem. at 8.  She notes that similar allegations have been sustained by courts in this and other circuits.  And Ridley disputes the contention that she is required to specify "each employee and the exact statement each employee made," because "[s]tating fraud with particularity is not the equivalent of providing every single minuscule detail."  *Id*.  She observes that courts have sustained claims where "'the general content of the misrepresentation [is provided] without stating the exact words used.'"  Pl's Mem. at 8-9 (quoting *Center Cadillac, Inc. v. Bank Leumi Trust  Co. of New York*, 808 F. Supp. 213, 229 (S.D.N.Y. 1992)).  Finally, Ridley notes that information as to the identities of the individuals involved in these communications is peculiarly within the knowledge of Allstate.

"[T]he rule regarding the pleading of fraud does not require absolute particularity or a recital of the evidence, especially when some matters are beyond the knowledge of the pleader

and can only be developed through discovery." 5A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1298 (3d ed. 1998). And while "[c]ourts . . . allow the plaintiff

extra leeway on pleading when the necessary information is under the exclusive control of the

defendant . . . [p]laintiffs must still provide factual allegations that make their claim[s]

plausible." 2 James Wm. Moore et al., Moore's Federal Practice ¶ 9.03[1][b] (3d ed. 2011).

Courts have followed this path in the application of Rule 9(b) in a range of

circumstances, including RICO actions, *qui tam* cases, and other situations where the plaintiff

lacked personal knowledge of the details of the allegedly fraudulent conduct. *See, e.g.*, *City of*

*New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 545 (E.D.N.Y. 1987) (finding that a

relaxed pleading standard applied in a RICO action where the fraudulent scheme involved

hundreds of billing transactions whose details the "defendants seem to be in the best position to

provide"); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 337-38 (D. Conn. 2004)

(finding that a relaxed pleading standard applied in *qui tam* case where access to factual

information from hospital defendants was limited by patient confidentiality concerns); *In re*

*Ahead by a Length, Inc.*, 100 B.R. 157, 166-68 (Bankr. S.D.N.Y. 1999) (finding that a relaxed

pleading standard applied where bankruptcy trustee asserted fraud claims "secondhand," while

defendants had "first hand knowledge of the acts described").

Here, the Second Amended Complaint states that "Allstate promised [Ridley] that if a

good payment record was maintained for six (6) months, then Allstate would refinance the

existing mortgage/loans on the premises to a lower interest rate with substantive savings on her

monthly payments . . . of at least $1,500.00." Sec. Am. Compl. ¶ 16. Ridley also alleges that

Allstate told her "not to obtain an attorney because they and their representatives were looking

23

out for [her] best interests" and that as a result, she "did not retain counsel and believed that the real estate broker, Allstate and [she] were all bonded together."  Sec. Am. Compl. ¶ 17.  Ridley avers that these statements were false, that she reasonably relied on them, and that she executed documents including a deed of trust on or about May 5, 2006, in piecemeal fashion and without review, "based upon the representations of Allstate, or Allstate's representative(s), that the contents of the documents were legitimate, correct and necessary to effectuate the loan."  Sec. Am. Compl. ¶¶ 18, 19.

As noted above, the elements of a claim for fraudulent inducement are that the defendant made a false representation, the defendant knew or believed the representation to be false, the defendant intended to induce the plaintiff to rely on the misrepresentation, and the plaintiff suffered damages as a result of that reliance.  *Aloua*, 2010 WL 2555648, at *2.  Taking the well-pleaded allegations of fact and the reasonable inferences that they support as true, the Court will consider these elements in turn.

The first element of this claim is that Allstate made a false representation.  Ridley alleges several false representations by Allstate in the period leading up to her entry into the loan and mortgage.  First, she points to Allstate's false representation that it would refinance Ridley's mortgage on more favorable terms including a lower interest rate, and reduce her monthly payments by $1,500 if she maintained a good payment record for six months, when it never intended to refinance the mortgage.  Next, Ridley alleges that Allstate misrepresented that it and its representatives were looking out for her best interests when they discouraged her from retaining an attorney.  And Ridley asserts that Allstate and its agent MSG knowingly misrepresented her financial situation on her mortgage application, including with respect to her

24

mortgage payments for her Hempstead property, her base income, her housing expenses, and her retirement account.

These allegations and the reasonable inferences that they support identify false representations made by Allstate to Ridley, they describe a claim that is plausible on its face, and they do so in sufficient detail to put Allstate on notice as to the "who," "what," "when," and "how" of the false representations that form the basis of her claim. Ridley does not attribute statements to unspecified groups of defendants, or leave Allstate to guess at the content of the statements at issue. And while she does not identify the individuals at Allstate who made these statements or exactly when these communications occurred, much of that information is more likely to be available to Allstate or peculiarly within Allstate's, not Ridley's, control. At the pleading stage, a greater level of detail is not required.

The second element is that Allstate knew or believed the representations to be false. As to her assertion that Allstate promised that it would refinance her mortgage on more favorable terms, Ridley also alleges that Allstate "intentionally concealed the truth [that it] never would refinance the existing mortgage," without regard to her payment record. Sec. Am. Compl. ¶ 32. As to Ridley's allegations that Allstate discouraged her from retaining an attorney and assured her that "[Allstate] and their representatives were looking out for [her] best interests," she also states that Allstate was merely pretending to act in her best interests "to put a sense of trust in [her] and induce [her] to enter into the mortgage loan." Sec. Am. Compl. ¶¶ 17, 29. And Ridley alleges that she provided accurate information to Allstate and its agent MSG, but that they knowingly misrepresented her financial situation on her mortgage application, including with respect to her  mortgage payments for her Hempstead property, her base income, her housing

expenses, and her retirement account.

These allegations and the reasonable inferences that they support identify grounds to conclude that Allstate knew or believed the representations it made to Ridley to be false.  As with the first element, these allegations describe a claim that is plausible on its face, and they provide sufficient detail to put Allstate on notice as to the basis for this element of her claim. Additional detail is not required at the pleading stage, especially where, as here, that information may be largely within Allstate's control.

The third element is that Allstate intended to induce Ridley to rely on its false representations.  Ridley asserts that Allstate was only "pretend[ing] to be acting in [her] best interests in order to put a sense of trust in [her] and induce [her] to enter into the mortgage loan" when it represented that it would refinance her mortgage if her payment record was good, when it represented that she did not need an attorney because it was protecting her interests, and when it included inaccurate information on her mortgage application.  Sec. Am. Compl. ¶ 29.  Ridley also states that she "reasonably had a sense of confidence in Allstate," and that if she had known the truth, she "would never have entered into the mortgage/loan agreements."  Sec. Am. Compl. ¶¶ 30, 33.

These allegations and the reasonable inferences that may be drawn from them identify circumstances supporting the conclusion that Allstate intended to induce Ridley to rely on its false representations so that she would enter into the mortgage and loan.  The alleged false representations were made by Allstate and its agent MSG to Ridley in connection with her decision to enter into the mortgage and loan to purchase the Las Vegas property.  It is reasonable to infer that Allstate promised to refinance the loan on better terms in just six months, and to

look out for Ridley's best interests, in order to persuade her to enter into the transaction.  To be sure, Ridley will have the burden to prove these matters in order to prevail on her fraudulent inducement claim.  But at the pleading stage, these allegations are sufficiently specific to put Allstate on notice as to this element of her claim.  And the allegations state a plausible claim that supports the "reasonable inference" that Allstate "is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1939 (citing *Twombly*, 550 U.S. at 556).

The fourth element is that Ridley suffered damages as a result of her reliance on Allstate's false representations.  Here, Ridley alleges that "[i]f the truth had been disclosed," she "would never have entered into the mortgage/loan agreements."  Sec. Am. Compl. ¶ 33.  In addition, she alleges that has sustained damages that exceed $100,000 as a result of having entered into the mortgage and loan, based on her reliance on Allstate's misrepresentations and inducements, and she seeks the recovery of those damages as well as other legal and equitable relief.  These allegations suffice to establish this element of Ridley's claim.

Taken individually and as a whole, Ridley's allegations set forth "enough facts to state a claim to relief" for fraudulent inducement to enter into the mortgage and loan "that is plausible on its face." *Twombly*, 550 U.S. at 570.  In particular, her averments that Allstate and its agent MSG falsely promised to refinance her loan on more favorable terms within six months, and that it and its representatives were looking out for her best interests, among others, move her claim across the boundary from one that is speculative to one that is "plausible on its face." *Id*.  For these reasons, and based on the entire record, Deutsche Bank's motion to dismiss Ridley's claim for fraudulent inducement is denied.

<u>Leave To Replead Dismissed Claims</u>

27

Rule 15 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (observing that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits").  As one court noted, "[i]t is well-established in the Second Circuit that leave to amend should be granted freely though the district court may exercise its discretion to deny a motion to amend if there is a good reason for it."  *In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004) (citation omitted).  Leave to amend has been denied for reasons "such as futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).  *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010) (denying leave to amend where proposed allegations were identical to those dismissed).

Deutsche Bank argues that Ridley should not be allowed to file a third amended complaint to replead her claims that are dismissed.  It notes that such a pleading would be her fourth attempt at stating those claims, and asserts that if Ridley could plead sufficient facts in support of her claims, she would have done so already.  According to Deutsche Bank, after three attempts, the inadequacy of her allegations "demonstrates [that the] Plaintiff's theories are fundamentally flawed and her pleading deficiencies are irreparable."  Def's Reply Mem. at 7. And Deutsche Bank asks the Court not to increase its burden by requiring it to respond another time.

Ridley does not respond to Deutsche Bank's arguments.  She does not request leave to replead her claims, or indicate how she would amend or supplement her allegations if leave to

28

replead is granted.  As one court stated, "[w]here previous amendments were allowed, a court need not *sua sponte* allow further opportunities to amend where no further attempt to amend the complaint is sought."  *Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 924 (S.D. Ohio 2010) (citation omitted).  And even if she had sought leave to replead, where a proposed amended pleading would not survive a motion to dismiss, it is within a trial court's discretion to deny leave to replead.  *See S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (finding that it is not an abuse of discretion to deny leave to amend a complaint where "even as amended [it] would fail to state a cause of action" (citation omitted)).

Where a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment.  But where, as here, the plaintiff has made three attempts, and a claim still falls short of this measure, the balance tips in the other direction, and leave to replead should be denied.

For these reasons, and based on the entire record, leave to replead Ridley's claims under Nevada's Unfair Lending Practices Act and for fraudulent concealment is denied.

## Conclusion

For the reasons stated herein, and based on the entire record, Deutsche Bank's motion to dismiss the Second Amended Complaint is granted in part and denied in part as reflected in this

Memorandum Decision.  An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
       July _**18**_, 2011

                                           _**s/ Elizabeth S. Stong**_
                                           HONORABLE ELIZABETH S. STONG
                                           UNITED STATES BANKRUPTCY JUDGE